IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL HAVILAND, individually and on behalf of all other similarly situated employees, | * * * * | 4:07-cv-18 RP-TJS |
| Plaintiffs, | * * | |
| v. | * * | |
| CATHOLIC HEALTH INITIATIVES - IOWA, CORP., | * * * | |
| Defendant. | * * * | ORDER |

Before the Court is a "Motion to Reconsider Ruling of a Magistrate Under FRCP 72" ("Motion to Reconsider"), filed December 31, 2009 by Michael Haviland, individually and on behalf of all other similarly situated employees ("Plaintiffs" or "Haviland"). Clerk's No. 114. Catholic Health Initiatives - Iowa, Corp. ("Defendant" or "Mercy") filed a Resistance to the Motion on January 19, 2010. Clerk's No. 118. Plaintiffs filed a Reply on January 29, 2010. Clerk's No. 119. The matter is fully submitted.

I. FACTUAL & PROCEDURAL HISTORY

Haviland, individually and on behalf of all other similarly situated employees, filed his petition in the Iowa District Court for Polk County on December 20, 2006, alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Iowa Wage Payment Collection Law, Iowa Code § 91A et seq. ("IWPCL"). *See* Clerk's No. 1.2. Defendant removed the case to federal court pursuant to federal question jurisdiction. *See* Clerk's No. 1; 28 U.S.C. § 1331. Subsequently, Haviland amended his complaint to add Jamie Aiken and Jeremy Patchin as party plaintiffs. *See* Clerk's No. 40.

In their Amended Complaint, Plaintiffs, current and former security guards for Mercy, state that their regular duties include "monitoring facilities, responding to emergencies, and patrolling the building surrounding the hospital." Am. Compl. ¶ 17. Plaintiffs are required to work at three separate locations for Mercy: Mercy Medical Center, Mercy Capitol, and Mercy Franklin. *See id.* ¶ 18. Plaintiffs are supposed to receive an unpaid thirty-minute meal break, but they allege that their meal breaks are "regularly interrupted." *Id.* ¶ 21. Moreover, Plaintiffs claim that, in actuality, they do not receive a meal break because they "must eat at their station, are not allowed to leave the facility and must continue completing their regular duties." *Id.* ¶¶ 19, 20, 22 ("Plaintiffs are not allowed to leave the facility and must perform their regular duties when they are called."). Plaintiffs allege that such interrupted and "working" meal breaks without pay resulted in Plaintiffs rendering services to Mercy "in excess of that prohibited by law." *Id.* ¶ 29. Plaintiffs state that Mercy failed to compensate Plaintiffs with overtime for the additional work performed during the interrupted and "working" meal breaks. *See id.* ¶¶ 29-30.

Plaintiffs requested class action certification under Federal Rule of Civil Procedure 23 for their IWPCL claim, and collective action certification under § 216(b) of the FLSA. Clerk's No. 18. On October 19, 2007, the Court denied class certification, but granted conditional collective certification. Clerk's No. 49. Although forty-four potential collective members were initially identified, only nine ultimately opted to participate in the collective action.

Plaintiffs' Motion to Reconsider is, in substance, an appeal of an Order filed December 21, 2009 by Chief Magistrate Judge Thomas Shields regarding the following four motions filed by the parties in this case:

1. Plaintiffs' Motion to Compel (Clerk's No. 81), filed October 30, 2009. Defendant filed a Resistance on November 16, 2009 (Clerk's No. 83), and Plaintiffs filed a Reply (Clerk's No. 88) on November 25, 2009.

    2.      Plaintiffs' Motion for Protective Order (Clerk's No. 82), filed November 11, 2009.  Defendant filed a Resistance on November 30, 2009 (Clerk's No. 89), and Plaintiffs filed a Reply (Clerk's No. 98) on December 7, 2009.

    3.      Plaintiffs' Second Motion to Compel (Clerk's No. 84), filed November 17, 2009.  Defendant filed a Resistance on December 4, 2009 (Clerk's No. 96).

    4.      Defendant's Motion to Quash Subpoena and for Protective Order (Clerk's No. 87), filed November 23, 2009. Plaintiffs filed two separate Resistances to the Motion, one on November 30, 2009 (Clerk's No. 93) and one on December 10, 2009 (Clerk's No. 101).  Defendant filed a Reply (Clerk's No. 105) on December 15, 2009.

Judge Shields held a hearing on the Motions on December 10, 2009.  *See* Clerk's No. 104.  In the December 21, 2009 Order, Judge Shields denied Plaintiffs' Motion to Compel, Motion for Protective Order, and Second Motion to Compel.  *See* Clerk's No. 109 at 9.  In the same Order, Judge Shields granted Defendant's Motion to Quash Subpoena and for Protective Order.  *See id*. at 10.  Plaintiffs now request reconsideration of Judge Shields' rulings pursuant to Federal Rule of Civil Procedure 72.  *See* Clerk's No. 114.

## II.  STANDARD OF REVIEW

"When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must . . . issue a written order stating the decision."  Fed. R. Civ. P. 72(a).  "A party may serve and file objections to the order . . . [and] [t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id*.  Title 28, United States Code § 636 likewise provides that a district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters "where it has been shown that the ruling is clearly erroneous or

contrary to law." 28 U.S.C. § 636(b)(1)(A) (2006); *see also Ferguson v. United States,* 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948); *Doyle v. Graske*, 579 F.3d 898, 902-03 (8th Cir. 2009) (citations omitted). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *See Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (citing *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

"Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *see also Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("Discovery is a nondispositive matter."); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) ("It is undisputed that the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard."). Indeed, the parties are in agreement that Judge Shields' December 21, 2009 Order should be reviewed under the clearly erroneous or contrary to law standard. *See* Pls.' Mot. to Reconsider ¶ 5 (articulating the applicable standard as "clearly erroneous or contrary to law"); Def.'s Resistance at 2 (same). "A party seeking to overturn a discovery order . . . bears a heavy burden. Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes . . . ." *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (internal quotations and citations omitted); *see also Bialas v. Greyhound Lines,*

*Inc.*, 59 F.3d 759, 764 (8th Cir. 1995) ("[A] magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes.").

### III.  LAW AND ANALYSIS

#### A.  *Plaintiffs' Motion to Compel*

In their Motion to Compel, Plaintiffs claimed that Defendant's attorneys conducted an investigation "as to whether Plaintiff[s] should be paid for missed lunches."  Clerk's No. 81 at 1.  According to Plaintiffs, Defendant declined to disclose any documentation relating to its investigation as protected either by the attorney-client privilege or the work product privilege.  *Id*.  Plaintiffs' Motion to Compel argued that "Defendant has to make a choice; it either needs to provide the information so Plaintiffs can process it and develop the case, or it can maintain the privilege thereby waiving its defenses to willfulness and good faith."  *Id*. at 1-2.  Accordingly, Plaintiffs requested that the Court either:  1) compel Defendant to produce documentation related to its investigation; or 2) require Defendant to drop its affirmative defenses, which Plaintiffs claim must necessarily be built upon the substance of the investigation documents.  Judge Shields denied Plaintiffs' motion, not because of its substance, but because the motion had been made far too late in the discovery process.  Judge Shields noted that, on September 18, 2009, the discovery deadline was extended upon Plaintiffs' motion, "[y]et plaintiffs then waited until October 30, 2009, approximately 11 days prior to the discovery deadline as amended, to file these motions to compel."  Clerk's No. 109 at 4-5.  Judge Shields noted his frustration that "these discovery issues have been identified by the parties for over one year, and yet on the very eve of filing of dispositive motions and completion of discovery, they are now being dropped on the Court."  *Id*. at 4.

Plaintiffs first argue that Judge Shields' denial of their Motion to Compel was erroneous because the Motion to Compel was timely filed, given that Local Rule 37 permits Motions to Compel to be filed up to fourteen days after the close of discovery. Pls.' Br. at 2. Thus, according to Plaintiffs, since their motion was filed on October 30, 2009, and since discovery ended on November 10, 2009, any motions to compel were not due before November 24, 2009, a deadline satisfied by Plaintiffs by more than three weeks. *Id.* Plaintiffs further contend that the reason they had to delay was in order to comply with the spirit of the discovery rules, which require good faith efforts to resolve disputes prior to filing a motion to compel.[1] *Id.* Finally, Plaintiffs claim that despite their good faith efforts, Defendant "doled out" discovery in a "slow drip" even as the discovery deadline approached. *Id.* at 3.

Defendant counters that Plaintiffs have failed to meet their burden to show that Judge Shields committed reversible error. Def.'s Resistance at 3. Defendant asserts that Plaintiffs are merely trying to reargue the merits of their Motion to Compel, hoping for a different result, despite the fact that Rule 72 does not allow a district court to vacate a magistrate judge's decision simply because it disagrees with the outcome. *Id.* at 3-4 (citing *Bowen v. Parking Auth.*, No. 00-5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002) ("Under the clearly erroneous standard of review, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently.")).

The Court holds that Judge Shields' denial of Plaintiffs' Motion to Compel was not clearly erroneous or contrary to law, as it was well within his discretion as a magistrate judge.

---

[1] "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

As Judge Shields points out in his Order, Plaintiffs' original Requests for Production of Documents were made on May 28, 2008, and Defendant's initial responses were served as early as July 25, 2008, meaning that Plaintiffs had fifteen months to pursue this particular line of discovery. Clerk's No. 109 at 4. Despite Plaintiffs' arguments to the contrary, the Court sees no reason why Plaintiffs could not have upheld their ethical duty to attempt to resolve the discovery conflict without court action, yet still have made this motion at a much earlier date.

In terms of Plaintiffs' claim to technical compliance with the motion deadline, Plaintiffs misunderstand the role of discovery deadlines. Deadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute. Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship. Local Rule 37(c) specifically requires that motions to compel "be filed as soon as practicable." Because no single rule or deadline can encompass the myriad variations in discovery, magistrate judges are given broad discretion to manage the overall process in the interests of dispatch and fairness. *See*, *e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (rejecting a motion to compel where there was "no legitimate excuse for the plaintiffs having waited until the last day of discovery to have filed their motion"); *DesRosiers v. Moran*, 949 F.2d 15, 22 (1st Cir. 1991) ("[T]he plaintiff knew, well in advance of trial, . . . [y]et, he failed to bring the matter of non-production to the court's attention . . . in . . . [a] timely fashion. In similar circumstances, courts have often deemed discovery violations to have been waived."); *Hinson v. Clinch County*, 231 F.3d 821, 826 (11th Cir. 2000) (holding that a court did not "abuse its discretion in denying . . . [a] motion to compel production due to . . . delay in bringing the motion"); *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (denying motion to compel where the plaintiff waited one and one-half years after the initial discovery request to move to

compel and concluding that "the plaintiff ha[d] failed to seek judicial relief for an unreasonably long period of time . . . . A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production."); *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d. 47, 51 (1st Cir. 1999) (stating that motions to compel production of substantial volumes of discovery should be made "well in advance of trial").

This Court has previously considered the issue of a magistrate judge's discretion to deny a motion to compel discovery even though the motion was technically filed on time:

> Finally, the Court finds ample justification for Magistrate Judge Shields' determination that Plaintiff has failed to diligently pursue discovery in this case, even after extensions of time were granted, and has no desire to reward Plaintiff for doing so. Indeed, the Court shares Magistrate Judge Shields' concern that granting Plaintiff's request would amount to "a wholesale reopening of discovery" only two months prior to the scheduled trial date. As Magistrate Judge Shields correctly concluded, the delay of Plaintiff in addressing discovery deficiencies, the substantial burden to Defendant of compelling further disclosure and the impact of additional discovery on the timely resolution of this matter all weigh heavily against granting Plaintiff's Motion to Compel.

*Austin v. United Parcel Serv. Inc.*, No. 4-01-CV-90404, 2002 WL 31050867, at * 4 (S.D. Iowa Sept. 13, 2002). The circumstances surrounding Plaintiffs' motion to compel are similar to the circumstances that gave rise to the rejected motion to compel in *Austin*. In the present case, there was an overall gap of fifteen months between the initial discovery requests and Plaintiffs' motion to compel. This compares to a gap of only five months in *Austin*. *Id*. at *1. In both cases, time extensions for discovery were granted and, in both cases, the late discovery requests threatened unnecessary and burdensome trial delay. *Id*. at *4; Clerk's No. 109 at 3. Given these similarities, the Court finds *Austin* additional support for upholding Judge Shields' denial of Haviland's Motion to Compel.

Even if Judge Shields' determination as to the timeliness of Plaintiffs' motion to compel was error, Plaintiffs' motion would still fail on the merits. The Defendant's litigation files requested by Plaintiffs are protected from discovery. As Defendant notes in its brief, "the files were created by [Mercy's] attorneys after Plaintiffs commenced this action for the purpose of evaluating and then, ultimately defending against the action." Def.'s Resistance at 7. "[A] matter committed to a professional legal adviser is prima facie so committed for the sake of the legal advice . . . and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1977) (quoting 8 Wigmore, *Evidence* § 2296 (McNaughton rev. 1961)). The record shows no clear evidence that the documents requested by Plaintiffs were not prepared by Defendant in anticipation of litigation and, therefore, they are protected under Federal Rule of Civil Procedure 26(b)(3)(A).

Moreover, in Plaintiffs' Reply regarding the Motion to Compel, Plaintiffs argued that "Defendant made the choice to rest two legal defenses . . . directly upon the advice and actions of counsel . . . ." Clerk's No. 88 at 1. "At trial, Defendant will be forced to provide evidence to support its legal defenses . . . . Defendant cannot be allowed to offer evidence that rests upon a foundation of advice from counsel to prove its claim, while preventing Plaintiffs from discovery on those facts." *Id*. at 2. Plaintiffs further argue in the present Motion to Reconsider that Defendant's litigation file is relevant to Plaintiffs' case because Defendant either already has, or potentially might at trial, place information in the litigation files at issue by raising affirmative defenses that rely on these documents. "The 'at issue' doctrine[, however,] relates to issues that the party asserting privilege puts in issue, not to issues raised by that party's adversary. Accordingly, the fact that the documents at issue might be relevant to [the opposing party] is of

no moment." *HSH Nordbank AG - N.Y Branch v. Swerdlow*, 259 F.R.D. 64, 74 (S.D.N.Y. 2009). Furthermore, as Judge Shields points out, Defendant has explicitly represented to the Court that "it was not, and would not, be relying upon an advice of counsel defense in this case."[2] Clerk's No. 109 at 5; *see also* Clerk's No. 116, Hr'g Tr. at 35, 37-38 ("In terms of the defense that is out there, most assuredly is a defense that Mercy Hospital acted in good faith, [but] not because of the reliance on the advice of counsel."). Thus, it does not appear that Defendant has put, or intends to put, the information sought to be discovered "at issue" in this case. Accordingly, the work product from their counsel's investigation must remain protected despite Plaintiffs' desire to procure it. The Court notes that if Defendant does attempt to submit at trial a defense based on improperly withheld discoverable material, Plaintiffs are not without recourse, as Plaintiffs can always move to estop introduction of such evidence at trial. *See, e.g., Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 981 (8th Cir. 2009) (defining the doctrine of judicial estoppel which provides: "[If] a party assumes a certain position in a legal proceeding . . . he may not thereafter . . . assume a contrary position, especially if it be to the prejudice of the party who has

---

[2] Plaintiffs argue in their Brief in support of Motion to Compel that "[t]here is no such thing as an affirmative defense of 'relying on the advice of counsel.'" Pls.' Br. at 5 n.5. While true, Defendant's disclaimer of reliance on an "advice of counsel" defense clearly indicates that Defendant is not relying on any defense *premised on* a foundation of "advice of counsel." *See* Def.'s Resistance at 8 ("Plaintiffs also contend that the assertion of good faith as an affirmative defense waives the privilege. This is incorrect. Plaintiffs fail to understand the distinction between the two defenses. '[T]he claim of good faith as an affirmative defense does not imply reliance on the advice of counsel, even in a case such as this where the party acknowledges seeking such advice. Rather the party must be some specific act or assertion put the content of that advice behind its claim of good faith– making it a 'factual basis of a . . .defense.' *Henry v. Quicken Loans, Inc.*, [No. 04-40346,] 2008 WL 2610180[, at *4] (E.D. Mich. June 30, 2008). At no point has Mercy placed the <u>content</u> of the post-suit advice it received at issue. Accordingly, Plaintiffs' Motion to Compel fails on the merits.").

acquiesced in the position formerly taken by him."); *United States v. Smith*, 574 F.3d 521, 527 (8th Cir. 2009) (discussing estoppel).

B.  *Plaintiffs' Motion for Protective Order*

In Plaintiffs' Motion for Protective Order, Plaintiffs requested that the Court "protect" a potential witness and former employee of Defendant, Tony Biancalana, from improper representation by Defendant's counsel.  Plaintiffs also argued that the requested order would protect Plaintiffs from interference with their discovery efforts concerning Mr. Biancalana.  More specifically, Plaintiffs asserted, *inter alia*, that:

- Defendant or its counsel has interfered with the ordinary discovery process of interviewing witnesses and gathering information by claiming that witnesses are clients.

- Defendants have cost Plaintiffs unnecessary expense by forcing them to take an unnecessary deposition, which has also resulted in the need and expense of filing this Motion

- [Defendant's counsel] should be disqualified from representing Tony Biancalana because it is not a proper or informed representation.

- Defendant and its counsel should be prohibited from representing any other former employees who may be involved in this lawsuit.

- Defendant and its counsel should be prohibited from communications with any former employees regarding this case.

- Defendant and its counsel should be prohibited from communicating with any current employees regarding this case, except for those individuals who impute liability to the company.

Clerk's No. 82 ¶¶ 14-21.

Although Plaintiffs' Motion requested a "Protective Order," Judge Shields "read[] [the motion] more as a motion for sanctions against defendant's attorneys," since it did not make "any real request for protection for plaintiffs in this litigation."  Clerk's No. 109 at 5.  Judge

Shields ruled that "there is no factual or legal basis for the relief which Plaintiffs request in this motion" and, therefore, denied Plaintiffs Motion for Protective Order. *Id*. at 6-7. He based his decision, in part, on *in camera* review of three exhibits (A, B, and C) which satisfied him that the representation of Mr. Biancalana by Defendant's counsel was "[n]either solicited [n]or improper." *Id*. at 6-7. He also concluded that Plaintiffs had not been prejudiced in a way that would merit the relief sought. *Id*. at 7.

Plaintiffs argue that Judge Shields' determination in this regard was erroneous because it is inappropriate for Defendant's law firm "to seek to represent fact witnesses for the benefit of its paying client." Pls.' Br. at 10. Defendant counters that Plaintiffs have failed to identify anything erroneous or contrary to law about Judge Shields' Order in regards to Plaintiffs' Motion for Protective Order. Def.'s Resistance at 10. Defendant further contends that defense counsel's representation of Mr. Biancalana is entirely appropriate, and that the propriety of the representation is well supported by evidence in the record. *See* Def.'s Resistance at 10-12.

The Court agrees with Defendant that neither Plaintiffs' Motion to Reconsider nor their Reply brief identifies any clearly erroneous finding by Judge Shields or any law that has been misinterpreted or misapplied. Although the caption to Plaintiffs' argument claims that Judge Shields' denial was "clearly erroneous and contrary to law," the body of the argument simply reiterates the same arguments made in support of the Motion for Protective Order before Judge Shields, but without reference to any legal authority. *See* Pls.' Mot. to Reconsider at 9-11; *United States. v Kaplan*, No. 4:06-CR-337, 2009 WL 723831, at *1 (E.D. Mo. Mar. 17, 2009) (rejecting objections to a magistrate judge's rulings where the plaintiff failed to "point to any error in [the magistrate's] factual findings or legal conclusions"); *Vester v. Asset Acceptance, L.L.C.,* No. 08-cv-01957, 2009 WL 2940218, at *8 (D. Colo. Sept. 09, 2009) ("An 'objection'

that merely reargues the underlying motion is little different than an 'objection' that simply refers the District Court back to the original motion papers; both are insufficiently specific to preserve the issue . . . ."); *Subh v. Wal-Mart Stores East, LP*, No. 07-479, 2009 WL 3153511, at *1 (D. Del. Sept. 30, 2009) (declaring that the reargument of an underlying case is an "abuse[] [of] the review process contemplated under Rule 72"); *Holloway v. Bridgestone Firestone N. Am. Tire, LLC*, No. 3:07-0009, 2007 WL 4146797, at *1 (M.D. Tenn. Nov. 20, 2007) (rejecting appeal where the plaintiff "cites no case law and merely reargues the points originally made . . . [and] simply asserts that the Magistrate Judge was wrong"). Indeed, Plaintiffs' objections to Judge Shields' ruling on the Motion for Protective Order appear premised more on generalized notions of right and wrong than on the specific issues in *this* case. *See* Pl.'s Br. at 10 ("Defendant's law firm has made it a common practice to seek to represent fact witnesses for the benefit of its *paying* client and quite bluntly, this practice should be either discontinued by all attorneys, or some guidance should be provided. . . . The Court rejected Plaintiffs' Motion and gave no guidance on whether this practice should be allowed to continue in this case and future cases . . . ."). Plaintiffs' objections, therefore, do not persuade the Court that Judge Shields' ruling is clearly erroneous or contrary to law.[3]

---

[3] The Court further notes that the law does not prevent a defendant from taking care of the legal needs of its former employees, nor does it prohibit those employees from accepting legal help from their former employers. *See Judd v. Take-Two Interactive Software, Inc.*, No. 07 Civ. 7932, 2008 WL 906076, at *3 (S.D.N.Y. Apr. 3, 2008) (stating that a defendant "may. . . offer to provide its former employees with counsel"). Even if the Court were to assume, *arguendo*, that there were some concerns about the propriety of defense counsel's relationship with Mr. Biancalana, the extreme remedy of disqualification requested by Plaintiffs would not be appropriate. *See Macheca Transp. Co. v. Philadelphia. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny. A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary.") (internal quotations and citations omitted); *Graham Co. v. Stanton T. Giffing & Connor Strong*

C.  *Plaintiffs' Second Motion to Compel*

Plaintiffs' second Motion to Compel sought to compel Defendant to produce "statements taken from fact witnesses pursuant to the investigation which was part of Plaintiffs' first motion to compel." Pls.' Br. at 8.  The second Motion to Compel was filed November 17, 2009, one week after the extended discovery deadline, and only one week before the absolute deadline for motions to compel pursuant to Local Rule 37.  *See* Clerk's No. 84.  As with Plaintiffs' first Motion to Compel, discussed *supra*, Judge Shields denied the second Motion to Compel on the basis that it was received far too late in the discovery process.  Clerk's No. 109 at 5.

As they did with respect to the first Motion to Compel, Plaintiffs argue that the second Motion to Compel was technically filed on time and that any delay in filing was due to dilatory actions by Defendant and good faith efforts by Plaintiffs to resolve the matter.  Pls.' Reply at 2-3.  Defendant counters that, procedurally, magistrate judges have the broad supervisory authority to "deny late-in-the game discovery gamesmanship."  Def.'s Resistance at 4.  Defendant also contends that this second motion to compel fails on the merits because "affidavits obtained by counsel after the commencement of litigation are protected by the work product privilege."  *Id.* at 9.

Having carefully reviewed the record, the Court finds, for the same reasons it did with respect to the first Motion to Compel, that Judge Shields' denial of the second Motion to Compel

---

*Cos., Inc.*, No. 08-1394, 2009 WL 3646348, *2-3 (E.D. Pa. Nov. 3, 2009) ("[M]otions to disqualify are an 'extreme sanction' that should not be imposed lightly. . . .  The party seeking disqualif[ication] bears the burden of clearly showing that continued representation would be impermissible. Vague and unsupported allegations are not sufficient to meet this standard.").  Judge Shields personally examined documents *in camera* in reaching a conclusion that defense counsel's representation of Mr. Biancalana was appropriate.  Plaintiffs have offered only argument and conjecture in support of a contrary conclusion.  Accordingly, the Court believes that Judge Shields' ruling on the matter was well within his discretion.

on the basis of untimeliness was not clearly erroneous or contrary to law given the facts and circumstances of this case.  Indeed, the ruling was well within the discretion afforded magistrate judges to oversee and control the discovery process.  *See*, *e.g.*, *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (observing that "judges should not hesitate to exercise appropriate control over the discovery process"); *Barnett v. Tree House Café, Inc.*, No. 5:05-cv-195, 2006 WL 3083757, at *3 (S.D. Miss. Oct. 27, 2006) ("A magistrate judge is 'far better situated to pass on discovery matters,' than is the district judge." (quoting *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995)).

D.  *Defendant's Motion to Quash Subpoena and for Protective Order*

The final motion under consideration in Judge Shields' Order was made by Defendant.  It requested that a subpoena served by Plaintiffs upon Russ Sickels, a former employee of Defendant, be quashed, and that "a protective order [be] entered to prevent Plaintiffs' Counsel from obtaining, using or disclosing [Defendant's] privileged information."  Clerk's No. 87.1 at 1.  Defendant argued that the subpoena specifically sought to procure attorney-client privileged and work product information.  *Id*.  Defendant also argued that Plaintiffs had issued the subpoena after the discovery deadline and that they had failed to comply with the notice requirement for subpoenas.  *Id*.

As noted previously, the extended discovery deadline in this case was November 10, 2009.  *See* Clerk's No. 80.  Plaintiffs served the subpoena on Mr. Sickels on November 16, 2009, without prior notice to defense counsel as required by Federal Rule of Civil Procedure 45(b)(1).[4]

---

[4] Rule 45(b)(1) provides that if a subpoena "commands the production of documents . . . then before it is served, a notice must be served on each party."  Plaintiffs' subpoena to Mr. Sickels "commanded" him to "produce and permit inspection and copying of . . . [a]ny and all recordings regarding any information provided to Defendant or its attorneys about wages,

While Judge Shields expressed significant concerns about issues of timeliness and the assertions of privilege by both parties, he ultimately granted Defendant's Motion to Quash Subpoena and for Protective Order "solely for the reason that plaintiffs failed to comply with the Federal Rules of Civil Procedure in serving the subpoena upon Russell Sickels without due and proper notice to defense counsel."  Clerk's No. 109 at 8.

There is nothing clearly erroneous or contrary to law in Judge Shields' decision to quash Plaintiffs' subpoena for failure to comply with Rule 45(b)(1).  *See Firefighter's Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (affirming district court's decision to quash subpoena for failure to comply with Rule 45(b)(1)).  Indeed, Plaintiffs do not actually make any direct argument that the basis for the Judge Shields' determination is improper.  Rather, Plaintiffs primary basis for objecting to Judge Shields' Order quashing the subpoena appears to be that they are confused because "the Court failed to give guidance on whether Plaintiffs can even call witnesses."  *Id*. at 12.  A lack of clarity regarding future ramifications of an order is not a basis, however, for objection under Rule 72.

With respect to Judge Shields' grant of Defendant's request for a protective order as part of his December 21, 2009 Order, Judge Shields made clear that Plaintiffs are not precluded from obtaining information from Mr. Sickels if they can make a "further showing that either the claimed information is no longer privileged because of a waiver by [D]efendant, or that in fact the information sought is not covered by either the attorney-client and/or the work product privilege."  Clerk's No. 109 at 9.  Accordingly, to the extent that Plaintiffs claim some prejudice

---

lunches, computer usage or job duties while employed at Catholic Health Initiatives (Mercy Hospital)."  Clerk's No. 87.2.

in obtaining information from Mr. Sickels, it is clear that relief remains available to them upon a proper substantive showing to Judge Shields.

## IV.  CONCLUSION

After careful consideration of both the pleadings now at issue and the underlying pleadings considered by Judge Shields, the Court is satisfied that Judge Shields' December 21, 2009 Order was not clearly erroneous or contrary to law.  While Plaintiffs clearly believe that the merits of their requests should outweigh the procedural and timeliness concerns relied on by Judge Shields as a basis for his decisions, it was entirely within the Magistrate Judge's discretion to rely on procedural and timeliness concerns as the basis for his determinations.  Accordingly, Plaintiffs' Motion to Reconsider (Clerk's No. 114) is DENIED in its entirety.  The Magistrate Judge's Order dated December 21, 2009 is hereby AFFIRMED.

　　　　IT IS SO ORDERED.

　　　　Dated this ___12th___ day of March, 2010.

_/s/ Robert W. Pratt_
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT